UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JESSE FANUS,

          Plaintiff,          6:14-cv-00935-AA

          v.          ORDER

JEFF PREMO,

          Defendant.

AIKEN, District Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed a complaint under 42 U.S.C. § 1983 alleging that the classification policies at the Oregon State Penitentiary (OSP) violate the Due Process Clause of the Fourteenth Amendment. Plaintiff, who does not currently have a death sentence, is housed on Death Row pursuant to ODOC's "automatic placement rule." Plaintiff seeks relief declaring the automatic placement rule unconstitutional, injunctive relief requiring the prison to classify plaintiff pursuant to the classification procedures

1 - ORDER

used in classifying all prisoners, and damages.

<u>Background</u>

Inmates at the Oregon State Penitentiary are evaluated using a multi-factor scoring guide and assigned a custody level classification Level One through Level Five. The highest custody level is Level Five. The Oregon Administrative Rules (OARs) require death sentence inmates to be automatically and permanently classified Level 5. They are not evaluated using other criteria; their sentence conclusively determines their custody level.

In 1999, plaintiff was convicted of aggravated murder and sentenced to death. Upon his transfer to OSP plaintiff was assigned a Level 5 custody classification pursuant to the "automatic placement rule" which provided a Level 5 custody classification for inmates who meet the following criteria:

> (A) Has demonstrated behavior causing serious management concerns, or has demonstrated behaviors that in the judgment of the Department present a threat sufficient to require special security housing or intensive management status.

> (B) Has been sentenced to death.

OAR 291-104-0111(7)(a).

With two exceptions not relevant here, all prisoners with a death sentence are housed on Death Row where the conditions of confinement are more restrictive than those which exist in the general population. Prisoners who are convicted of

Aggravated Murder, but do not have death sentences, are subject to a classification process, and are housed in the general population of the prison.  Prisoners classified as Level 5 as the result of disciplinary, security or other issues are housed in the Intensive Management Unit (IMU) or the Disciplinary Segregation Unit (DSU).

In October, 2012, plaintiff's death sentence was set aside pursuant to a judgment for post-conviction relief, and he is currently awaiting a new sentencing trial.

After his death sentence was set aside, plaintiff's request to be moved to the general population was denied and he filed a grievance requesting reclassification and transfer from Death Row.

Subsequently, the ODOC amended the Oregon Administrative Rules to require a Level 5 custody classification for inmates who "are pending retrial in a case in which a death sentence may be re-imposed." OAR 291-104-0111(7)(a) (effective May 1, 2014).  The ODOC also amended the OAR regarding Intensive Management Unit (IMU) assignments to include those inmates "who are pending retrial in a case in which a death sentence may be re-imposed." OAR 291-055-0019(1)(b) (effective May 1, 2014).

Plaintiff exhausted his administrative remedies regarding his request to be classified pursuant to the classification

procedures used to classify all (non-death sentence) prisoners and filed this action.

Discussion

Before the court is plaintiff's Motion for Preliminary Injunction (#5) requesting the court to enjoin defendant from applying the automatic placement rules to him, and to require defendant to apply the same classification rules that are used for all prisoners, and to house him based upon that classification determination.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," and it is generally inappropriate for a federal court  at the preliminary injunction stage to give a final judgment on the merits. University of Texas v. Camenisch, 451 U.S. 391, 395 (1981); Tanner Motor Livery, Ltd. V. Avis, Inc, 316 F.2d 804, 808 (9th Cir. 1983); see also, Regents of University of California v. ABC, Inc., 747 F.2d 511, 514 (9th Cir. 1984) ("* * * the function of a preliminary injunction is to preserve the status quo ad litem.") Wright and Miller, Federal Practice and Procedure § 2947 (1973) ("* * * the most compelling reason in favor of entering a Rule 65(a) order is the need to prevent the judicial process from being rendered futile by defendant's actions or refusal to act").

In this case, the analysis of this consideration was rendered problematic by defendant's amending the automatic placement rule after plaintiff became no longer technically subject to its provision.   This *ex post facto* manipulation altered the "status quo" in a way that was apparently *intended* to render the judicial process futile.   Therefore, preservation of the "relative positions of the parties until a trial on the merits can be held" is not a compelling consideration in this case.

In addition, defendant's action in amending OAR 291-104-0111(7(a) obfuscated the distinction between a "prohibitory injunction" and a "mandatory injunction."   Therefore, the usual rule requiring a "heightened standard" to be applied to mandatory injunctions, *see*, <u>Katie A., ex rel. Ludin v. Los Angeles County</u>, 481 F.3d 1150, 1156 (9th Cir. 2007), is not necessarily appropriate.

The relevant factors for determining whether a preliminary injunction should issue were canvassed by the Ninth Circuit in <u>United States v. Odessa Union Warehouse</u>, 833 F.2d 172, 174 (9th Cir. 1987) as follows:

> "The factors we traditionally consider in determining whether to grant a preliminary injunction in this circuit are (1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective

parties; and (4) in certain cases, whether
the public interest will be advanced by
the provision of preliminary relief. Dollar
Rent A Car of Washington Inc. v. Travelers
Indemnity Company, 774 F.2d 1371, 1374
(9th Cir. 1985). To obtain a preliminary
injunction, the moving party must show
either (1) a combination of probable success
on the merits and the possibility of
irreparable injury or (2) that serious
questions are raised and the balance of
hardships tips in its favor. Benda v. Grand
Lodge of the Int'l Ass'n of Machinists &
Aerospace Workers, 584 F.2d 308, 314-15
(9th Cir. 1978), cert. dismissed, 441 U.S.
937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).
These two formulations represent two points
on a sliding scale in which the required
degree of irreparable harm increases as the
probability of success decreases. Oakland
Tribune Inc. v. Chronicle Publishing Co.,
762 F.2d 1374, 1376 (9th Cir. 1985).

Thus, "[t]he elements of the preliminary injunction test
are balanced, so that a stronger showing of one element may
offset a weaker showing of another. For example, a stronger
showing of irreparable harm to plaintiff might offset a lesser
showing of likelihood of success on the merits." Alliance for
the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir.
2011) (citing, Winter v. NRDC, 555 U.S. 7 (2008)).

The moving party must show, at an irreducible minimum,
that they have a fair chance of success on the merits.
Stanley v. University of Southern California, 13 F.3d 1313,
1319 (9th Cir. 1994), (quoting Martin v. International Olympic
Committee, 740 F.2d 670, 674-675 (9th Cir. 1994)); Committee
of Cent. American Refugees v. I.N.S., 795 F.2d 1434, 1437 (9th

6 - ORDER

Cir. 1986). This is so because the probability of success on the merits is the critical standard in determining the propriety of preliminary relief. <u>Lancor v. Lebanon Housing Authority</u>, 760 F.2d 361, 362 (1st Cir. 1985).

<u>1.) Likelihood of success on the merits:</u>  The Ninth Circuit has adopted an analytical approach to the "likelihood of success" factor which considers whether "serious questions going to the merits (are) raised and the balance of hardships tips sharply in plaintiff's favor." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011). This test is also referred to as the "serious questions" test. *Id.*, at 1132.  "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are met." *Id.*

Plaintiff has presented serious questions going to the merits. He has alleged that he is subjected to "significant and atypical hardship relative to ordinary prisons in Oregon" that creates a  liberty interest implicating due process protections.  Although defendant disputes these arguments, they are unquestionably "serious questions."

The record reflects that placements in other restrictive housing such as the  Administrative Segregation Unit (ASU), the DSU and the IMU, are subject to time limitations, in some

cases due process, and periodic review. By contrast, plaintiff has been confined on Death Row for over 5,000 days, during which he has never received an opportunity to be heard, his status has never been reviewed, and he has never been evaluated to determine whether the conditions of his confinement are appropriate or necessary. I find that these circumstances raise serious questions of entitlement to due process protections and the constitutionality of the "automatic placement rule." As discussed below, the balance of hardships tips sharply in plaintiff's favor.

I find that plaintiff has established a reasonable likelihood of success on the merits.

2.) Irreparable harm: Plaintiff's argument that "[c]ertainly, confinement on Death Row for an indefinite period of time constitutes irreparable harm," Memorandum in support (#6), is not convincing. This factor is usually expressed as "a likelihood that the party will suffer irreparable harm *in the absence of preliminary relief.*" *See*, Winter v. NRDC, 555 U.S. 7, (2008). In other words, the purpose of preliminary relief is to prevent irreparable harm from occurring before a judgment on the merits is reached. Plaintiff will not necessarily be confined on Death Row for an "indefinite period of time." It is my intention to resolve the merits of this case promptly.

Plaintiff also argues that keeping him housed on Death Row "prevents him from developing relevant evidence permitting jurors to give a negative response to Capital Sentencing Question 'Two' (ORS 163.150(1)(b)(B)) which asks: 'Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.'" *Id.* p. 11-12.

Defendant argues that "any harm is speculative at best." Defendant's Response (#15) p. 3.

Granted, the irreparable harm factor is plaintiff's weak link in the preliminary injunction analysis. However, the standard only requires a showing of the "possibility" of irreparable harm. Being confined in the restrictive conditions on Death Row prevents plaintiff from establishing a history of good behavior and peaceful existence in the less restrictive general population.

Given the sliding scale analysis discussed above, it is much less significant in view of plaintiff's likelihood of success on the merits.

3.) Balance of hardships:[1] The restrictive conditions of

---

[1]

This factor is sometimes characterized as "the balance of equities." *See*, <u>California Pharmacists v. Maxwell-Jolly</u>, 563 F.3 847, 849 (9th Cir. 2009). I find that "equities" is particularly appropriate in this case given that defendant "moved the goal post" by amending the rules.

confinement on Death Row include relative isolation, limited exercise and "yard time," limited and non-contact only visitation, no access to group religious worship or club activities, few educational programs and no drug and alcohol treatment programs.

Although the details of the custody level classification procedures have not been made part of the record, the record reflects that all incoming inmates are evaluated using a multi-factor scoring guide. Such a procedure does not seem to be a very onerous task and it would not constitute a significant "hardship" on defendant to conduct such an evaluation on plaintiff. I find that the balance of hardships (equities) tips sharply in plaintiff's favor.

1.) Public interest: Defendant alleges: "ODOC's policy of housing inmates with a death sentence, or are pending retrial in a capital case ... is designed to provide for the safe and secure operation of ODOC through special security housing" and that "reclassifying Fanus and possibly reassigning him from Death Row could disrupt those policies." Defendant's Response (#15).

It is uncontested that some inmates necessitate a higher level of security through special housing and that policies facilitating that necessity serve an important public interest. However, those policies are not impeded - and are

10 - ORDER

arguably *advanced* by an individualized determination of an inmate's need for special housing rather than a categorical classification based on their sentence.

I agree that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights," G.& V Lounge v. Michigan Liquor Control Comm., 23 F.3d 1071, 1079 (6th Cir. 1994), and find that the "public interest" factor in this case weighs slightly in plaintiff's favor.

<u>Conclusion</u>

Based on all of the foregoing, plaintiff's Motion for Preliminary Injunction (#5) is granted. Defendant is ordered to forthwith apply the same classification procedures used to classify all inmates in the custody of the Oregon Department of Corrections to plaintiff, and to house plaintiff based upon the classification determination. The classification evaluation and Custody Level determination shall be conducted within 14 days of the date of this order.

IT IS SO ORDERED.

DATED this _10th_ day of October, 2014.

_Ann Aiken_
Ann Aiken
United States District Judge

11 - ORDER